CO-PROB12C
(Revised 5/14-D/CO)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

U.S.A. VS. HIEP CONG VAN                                     DKT. NO. 1:20CR00032-1

## PETITION FOR WARRANT ON PERSON UNDER SUPERVISION

COMES NOW, Damillah Williams, United States Probation Officer, presenting an official report upon the conduct and attitude of defendant Hiep Cong Van, who was placed on supervision by the Honorable Anna J. Brown, sitting in the United States District Court in Portland, Oregon, on December 7, 2017.  The defendant was sentenced to a cumulative 37 months imprisonment and three years' supervised release for offenses of Count 1: Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. §§ 1349, 1341, and 1343 and Count 27: Money Laundering in violation of 18 U.S.C. §§ 1957 and 2.  Supervision commenced on August 30, 2019, and is set to expire on August 29, 2022.  Jurisdiction of the case was transferred from the District of Oregon to the District of Colorado on January 24, 2020.  As noted in the Second Amended Judgment [Document 1-3], the Court ordered mandatory, special and standard conditions of supervision.  The probation officer alleges the defendant has violated the following terms and conditions of supervised release as set forth herein.

**RESPECTFULLY PRESENTING PETITION FOR ACTION OF THE COURT DUE TO CAUSE AS FOLLOWS:**

**VIOLATION(S) ALLEGED:**

1. **FAILURE TO REPORT ARREST/QUESTIONING BY LAW ENFORCEMENT OFFICER**

On or about May 12, 2020, the defendant was contacted by Denver Police Investigator Mortimer, and failed to report the contact to the probation officer within 72 hours, which constitutes a Grade C violation of supervised release.

On July 12, 2022, the Probation Officer received a copy of Denver Police Department General Offense Hardcopy Report Number 2020-290795, pertaining to a criminal investigation with the Denver Police Department, regarding a stolen vehicle.  The report indicated on May 12, 2020, Investigator Mortimer was working an investigation of a Lo-Jack system notification he received while on shift.  The Lo-Jack led him to an alley behind 965 South Decatur Street in Denver, Colorado.  The neighbor to the north of the residence provided the investigator a business card of the owner of the property which indicated "Mike" (later identified as the defendant) with Champions Landscape and Outdoor Designs.  Investigator Mortimer contacted the defendant and he returned to the address.  His identity was confirmed as Hiep Cong Van through his Colorado Driver's License.  The defendant cooperated with questions asked by Investigator Mortimer and was released from the scene.  The defendant failed to report this police contact to the Probation Officer in any regard.

Case 1:20-cr-00032-RM   Document 4   Filed 07/27/22   USDC Colorado   Page 2 of 9

| Hiep Cong Van | Petition for Warrant on Person Under Supervision | July 27, 2022 |
| --- | --- | --- |
| 1:20CR00032-1 | Page 2 | |

2. **YOU MUST NOT ENGAGE IN ANY FORM OF GAMBLING AND YOU MUST NOT ENTER ANY CASINO OR OTHER ESTABLISHMENT WHERE GAMBLING IS THE PRIMARY PURPOSE**.

On or about June 2021 through August 2021, the defendant entered the Monarch Casino Resort Spa Black Hawk and/or Isle of Capri Casino Hotel Black Hawk with the purpose of gambling, which constitutes a Grade C violation of supervised release.

On August 31, 2021, the Probation Officer received information from a caller who wished to remain anonymous in fear of retaliation from the defendant. The caller advised the defendant was an employee and expressed concerns of the defendant "going to the casino every night" roughly "five to six days per week" and was fearful of him going back to his "old ways." Additionally, the caller provided the defendant was gambling at the Monarch Casino with a friend. The caller explained the defendant's ability to afford the costs associated with gambling being attributed his friend providing him with money, and he was also taking the cash tips he received from customers at work to support his gambling habits.

On September 8, 2021, the Probation Officer conducted a home visit to the defendant's residence. Initially, the defendant was not home, but he was later directed to report to his residence to complete the home contact. Eventually, he returned, but arrived with a woman named Cassie. The Probation Officer spoke with Cassie outside of the residence for clarification purposes of her relationship/ties to the defendant. It was revealed the defendant met Cassie a couple months prior. She disclosed meeting him at the casino when the defendant was gambling at the Isle of Capri Casino in Black Hawk. She advised the defendant had been gambling and was using "my money" to do so. When asked how much money she provided the defendant to gamble, she said "$8,000 to $10,000" on any given night. We discussed how she was able to afford that amount of money for the defendant, and she disclosed her family was "wealthy" and owned a restaurant business.

The Probation Officer spoke with the defendant during the home visit, separate from other parties about concerns of him gambling. The defendant eventually admitted to gambling, but insisted he had only spent approximately $5,000 to $7000 total. When asked about his time in the casino, the defendant disclosed first gambling in June 2021, and that he would receive money from friends and family to support his gambling conduct. The defendant expressed not being aware of his special conditions as outlined in his Judgment prohibiting him from gambling.

In response to the violation, the defendant was instructed to report for an appointment at the Probation Office to re-review his Judgement and further discuss concerns of his violation conduct. On September 23, 2021, the defendant reported as scheduled. The Probation Officer reviewed his previously signed Judgment and he presented extremely confused about monetary gains and pecuniary proceeds, which was explained in its entirety. Furthermore, the Probation Officer discussed issues and concerns of him receiving cash and avoiding maintaining records of his cash earnings, monetary gains, or pecuniary proceeds into his checking and/or savings account as outlined in his special conditions in his Judgement. As an intermediate sanction, the Probation Officer

Case 1:20-cr-00032-RM   Document 4   Filed 07/27/22   USDC Colorado   Page 3 of 9

Hiep Cong Van  
1:20CR00032-1

Petition for Warrant on Person Under Supervision  
Page 3

July 27, 2022

referred the defendant to return to gambling addiction treatment to address concerns surrounding his gambling addiction.

3. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about February 18, 2022, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty.  This constitutes a Grade C violation of supervised release.

On July 12, 2022, the Probation Officer received a Denver Police Department General Offense Hardcopy Report, pertaining to a criminal investigation with the Denver Police Department of fraud, involving the defendant cashing several checks to Mychau Market Inc., fka Cambio De Cheques/Store, Case Number GO2021-641577.  The Cambio De Cheques/Store is a company that specializes in functions relating to depository banking.

The report indicates on November 11, 2021, at approximately (1846), Denver Police was dispatched to 490 South Federal Boulevard in Denver, Colorado, on a report of a fraud.  According to the complainant, who is also the owner of Mychau Market Inc., the defendant, along with another party, brought in eights checks between October 18, 2021, and October 25, 2021, and deposited them.  The checks were written off the business account for Champion Landscape and Design LLC, but did not clear the bank due to the business account for Champions Landscape and Design LLC being closed. The victim advised the defendant went by the name "Mike", which was the name listed on multiple checks.  However, she provided the Officer with copies of the driver's license used to cash the checks which bared the defendant's legal name, Hiep Cong Van.  The victim expressed trying to reach out to the defendant and the other party involved in order to get this issue resolved, but they never returned her phone calls, so she contacted police.

The case was turned over to the Financial Crimes Unit with the Denver Police Department, and assigned to Detective Tompkins.  Further investigation revealed the party present with the defendant when the checks were cashed was the owner of Champion Landscape and Design.  The victim reported all check amounts to the Internal Revenue Service (IRS) as the defendant would cash two to three checks at a time, for which the reporting forms were provided.   A Check History was provided by Detective Tompkins of checks cashed by "Mike Van."  Between September 27, 2021, to October 20, 2021, the report showed 21 checks totaling $132,806.  A BOK Financial Report shows eight checks totaling $61,750 on ReturnSource.

A Court Order for US Bank records was obtained for the US Bank account belonging to Champion Landscape and Design LLC, which revealed the account was closed in October 2021.

On February 18, 2022, Detective Tompkins received a call from the victim stating she had entered an agreement with her attorney and the defendant for him to repay the funds associated with the bad checks which were cashed, totaling $43,745.00.

Case 1:20-cr-00032-RM   Document 4   Filed 07/27/22   USDC Colorado   Page 4 of 9

| | | |
|---|---|---|
| Hiep Cong Van | Petition for Warrant on Person Under Supervision | July 27, 2022 |
| 1:20CR00032-1 | Page 4 | |

According to the signed Promissory Note drafted by the law firm that represents Mychau Market Inc., fka Cambio De Cheques/Store, the defendant agreed to pay $5500 per month, in 14 payments, to pay a total of $77,000.  Because this is "business money", a charge of $7,000 in interest was applied plus attorney's fees of $350 per hour.  The first payment was scheduled for May 1, 2022.  Due to the defendant entering in a civil agreement with the victim for repayment, the District Attorney refused charges and the investigation was closed.

At no time did the defendant report this change in his economic circumstance to the Court.

4. **YOU MUST DEPOSIT INTO A SINGLE CHECKING ACCOUNT AND/OR SAVINGS ACCOUNT IN YOUR OWN NAME AND DEPOSIT INTO THIS ACCOUNT ALL INCOME, MONETARY GAINS, OR OTHER PRECUNIARY PROCEEDS, AND MAKE USE OF THIS ACCOUNT FOR PAYMENT OF ALL PERSONAL EXPENSES.**

On or about September 22, 2021, the defendant made a purchase to American Furniture Warehouse in cash and failed to make this purchase using his checking account, which constitutes a Grade C violation of supervised release.

On September 21, 2021, a home visit was conducted to the defendant's residence.  While there, it was noted the defendant had no furniture in the one-bedroom and one-bathroom apartment.  He advised buying furniture and was waiting for it to be delivered.

On October 1, 2021, a home visit was conducted to the defendant's residence.  While there, it was noted the defendant had fully furnished his apartment with a brand-new television, couch set, end tables, bar stools, and a bedroom set.  He advised purchasing the furniture at American Furniture Warehouse, but initially stated his girlfriend purchased the furniture.  The defendant then clarified the both of them paid for it but admitted to paying for it in cash.  The defendant was instructed to provide the sales receipt of the furniture by the end of business.

The sales receipt received by the defendant from American Furniture Warehouse indicated a sales order dated September 22, 2021, in the amount of $4,360.47, which was sold to "Mike Van" and delivered to "Mike Van" listing his home address and contact information.  The defendant highlighted that he only purchased seven of the 11 items, which totaled $524.00.

5. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about August 23, 2021, August 29, 2021, and August 30, 2021, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty.  This constitutes a Grade C violation of supervised release.

Case 1:20-cr-00032-RM   Document 4   Filed 07/27/22   USDC Colorado   Page 5 of 9

Hiep Cong Van  
1:20CR00032-1

Petition for Warrant on Person Under Supervision  
Page 5

July 27, 2022

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program. The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $43,500 in cash to be used by the defendant to engage in gambling at the Monarch Black Hawk Casino. The CTR also indicated the defendant cashed out a total of $26,000. The total Cash-In amount was a result of a $30,500 transaction on August 23, 2021, and a $13,000 transaction on August 29, 2021. Cash-Out amount of $26,000 occurred on August 30, 2021. The aforementioned transactions reflect a change in the defendant's ability to pay his assessed financial penalty for the month of August 2021.

6. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about September 3, 2021; September 4, 2021; September 5, 2021; September 6, 2021; September 7, 2021; September 14, 2021; September 16, 2021; September 18, 2021; and September 27, 2021, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty. This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program. The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $151,950 in cash to be used by the defendant to engage in gambling at the Monarch Black Hawk Casino. The CTR also indicated the defendant cashed out a total of $64,405. The total Cash-In amount was the result of a $14,850 transaction on September 3, 2021; a $11,200 transaction on September 4, 2021; a $20,000 transaction on September 6, 2021; a $21,800 transaction on September 7, 2021; a $22,200 transaction on September 14, 2021; a $11,800 transaction on September 16, 2021; a $35,900 transaction on September 18, 2021; and a $14,200 transaction on September 27, 2021. The total Cash-Out amount was the result of a $29,000 transaction on September 5, 2021; a $24,155 transaction on September 6, 2021; and a $11,250 transaction on September 14, 2021. The aforementioned transactions reflect a change in his ability to pay his assessed financial penalty for the month of September 2021.

7. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about October 2, 2021; October 16, 2021; October 19, 2021; October 20, 2021; October 22, 2021; October 26, 2021; and October 27, 2021, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty. This constitutes a Grade C violation of supervised release.

Case 1:20-cr-00032-RM   Document 4   Filed 07/27/22   USDC Colorado   Page 6 of 9

Hiep Cong Van
1:20CR00032-1

Petition for Warrant on Person Under Supervision
Page 6

July 27, 2022

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program.  The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $143,840 in cash used by the defendant to engage in gambling at the Monarch Black Hawk Casino.  The CTR also indicated the defendant cashed out a total of $13,600.  The total Cash-In amount was the result of a $25,000 transaction on October 2, 2021; a $19,600 transaction on October 16, 2021; a $13,000 transaction on October 19, 2021; a $23,300 transaction on October 20, 2021; a $18,600 transaction on October 22, 2021; a $33,500 transaction on October 26, 2021; and a $10,840 transaction on October 27, 2021.  The total Cash-Out amount was a result of $13,600 transaction on October 20, 2021.  The aforementioned transactions reflect a change in his ability to pay his assessed financial penalty for the month of October 2021.

8. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about November 25, 2021, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty.  This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program.  The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $13,575 on November 25, 2021, at the Monarch Black Hawk Casino.  The CTR indicated the defendant cashed out this total in cash on the aforementioned date.  This transaction reflects a change in his ability to pay his assessed financial penalty for the month of November 2021.

9. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about January 28, 2022, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty.  This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program.  The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $12,600 on January 28, 2022, used by the defendant to engage in gambling at the Monarch Black Hawk Casino.  The total Cash-In amount was a result of the aforementioned single transaction.  This reflects a change in his ability to pay his assessed financial penalty for the month of January 2022.

Case 1:20-cr-00032-RM   Document 4   Filed 07/27/22   USDC Colorado   Page 7 of 9

| Hiep Cong Van | Petition for Warrant on Person Under Supervision | July 27, 2022 |
|---|---|---|
| 1:20CR00032-1 | Page 7 | |

10. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about March 5, 2022, and March 7, 2022, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty.  This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program.  The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $26,700 in cash he used to participate in gambling at the Monarch Black Hawk Casino.  The total Cash-In amount was a result of a $10,800 transaction on March 5, 2022, and a $15,900 transaction on March 7, 2022.  The aforementioned transactions reflect a change in his ability to pay his assessed financial penalty for the month of March 2022.

11. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about April 4, 2022, and April 6, 2022, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty.  This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program.  The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $29,500 in cash the defendant used to engage in gambling at the Monarch Black Hawk Casino.  The total Cash-In amount was a result of a $14,350 transaction on April 4, 2022, and a $15,150 transaction on April 6, 2022.  The aforementioned transactions reflect a change in his ability to pay his assessed financial penalty for the month of April 2022.

12. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about May 18, 2022; May 20, 2022; May 22, 2022; May 27, 2022; and May 30, 2022, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty.  This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program.  The 81-page Currency Transaction Report (CTR) revealed the defendant

Case 1:20-cr-00032-RM   Document 4   Filed 07/27/22   USDC Colorado   Page 8 of 9

| Hiep Cong Van | Petition for Warrant on Person Under Supervision | July 27, 2022 |
|---|---|---|
| 1:20CR00032-1 | Page 8 | |

made transactions totaling $84,200 in cash used by the defendant to engage in gambling at the Monarch Black Hawk Casino.  The total Cash-In amount was a result of a $14,900 transaction on May 18, 2022; a $17,600 transaction on May 20, 2022; a $20,800 transaction on May 22, 2022; a $19,900 transaction on May 27, 2022; and a $11,000 transaction on May 30, 2022.  The aforementioned transactions reflect a change in his ability to pay his assessed financial penalty for the month of May 2022.

13. **YOU MUST NOT ENGAGE IN ANY FORM OF GAMBLING AND YOU MUST NOT ENTER ANY CASINO OR OTHER ESTABLISHMENT WHERE GAMBLING IS THE PRIMARY PURPOSE.**

On or about August 2021 through May 2022, the defendant entered the Monarch Casino Resort Spa Black Hawk with the purpose of gambling, which constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program.  The 81-page Currency Transaction Report (CTR) revealed the defendant possessed a total Cash-In amount of $1.6 million dollars between the dates of August 23, 2021, through May 30, 2022, at the Monarch Casino Resort Spa Black Hawk in Black Hawk, Colorado, resulting from 27 documented separate occurrences.  It should be noted, all Cash-in transactions totaled amounts between $10,000 upward to $33,500.  The listed Cash-Out transactions totaled $117,580.  Additionally, records reveal the defendant's 32-page Hotel portfolio with the Monarch Casino Resort Spa Black Hawk, reflecting hotel stays by the defendant between August 31, 2021, through May 29, 2022, on 17 different occasions.  To date, the defendant has denied gambling in any capacity since August 2021 to both the Probation Officer and his gambling addiction specific therapist.

## STATEMENT IN SUPPORT OF ACTION/JUSTIFICATION

Based on the nature of the defendant's current conviction and the alleged violations, the probation officer requests a warrant for the defendant's arrest due to the potential danger presented by the defendant.

## RESPECTFULLY REQUESTING THAT THE COURT WILL ORDER:

The issuance of a warrant due to violation(s) of supervised release and, subsequent to the arrest of the defendant, that the Court consider revocation of supervision.

I DECLARE under penalty of perjury that the foregoing is true and correct.

*/s/Damillah Williams*
Damillah Williams
United States Probation Officer
Place:   Denver
Date:    July 27, 2022

*/s/Garret Pfalmer*
Garret C. Pfalmer
Supervisory United States Probation Officer
Place:   Denver
Date:    July 27, 2022


### PRELIMINARY ADVISORY REVOCATION GUIDELINE CALCULATION:

The defendant was originally convicted of a Class C felony, thus the maximum sentence allowed upon revocation is 2 years imprisonment, pursuant to 18 U.S.C. § 3583(e). Based upon Chapter 7 of the U.S. Sentencing Guidelines, the most serious conduct alleged as a violation of supervision is considered a Grade C violation. The defendant's criminal history is a Category III, thus the advisory guideline range for revocation is five to 11 months.


### STATEMENT IN SUPPORT OF DETENTION AT INITIAL APPEARANCE:

Based on the defendant's performance while on supervision, the probation officer recommends the defendant be detained pending revocation proceedings. Pursuant to 18 U.S.C. § 3143(a), the defendant is viewed as presenting a risk of flight and danger to the community. The defendant has a long-standing history of gambling which has been fueled by conduct displayed by the defendant through extreme manipulation, deceit, and fraud to support his addiction. The defendant has been the crew leader/manager for Champion Landscape and Outdoor Design where he is responsible for completing bids on landscape work with clients for the company. Part of the scheme involves the defendant allegedly using down-payments collected from contracts he generates for customers with the sole purpose to fund his gambling addiction and never returning to complete any work. There are reports of multiple accounts being used by the defendant with Chase bank and US Bank, which have not been disclosed to the Probation Officer. It is unclear where or how the defendant is accessing the extremely large amounts of money to fund his gambling addiction, but he has made no significant efforts to make his victims whole or notify the Probation Officer or the Court of any changes in his economic circumstances. In addition, he presents a risk of non-appearance based upon his Vietnamese ties and excessive amount of unreported funds he has access to.

Pursuant to F.R.Crim.P.Rule 32.1(a)(6), the burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the defendant.