CO-PROB12C
(Revised 5/14-D/CO)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

U.S.A. vs. HIEP CONG VAN                                         DKT. NO. 1:20CR00032-1

### SUPERSEDING PETITION DUE TO VIOLATIONS OF SUPERVISION

COMES NOW, Damillah Williams, United States Probation Officer, presenting an official report upon the conduct and attitude of defendant Hiep Cong Van, who was placed on supervision by the Honorable Anna J. Brown, sitting in the United States District Court in Portland, Oregon, on December 7, 2017.  The defendant was sentenced to a cumulative 37 months' imprisonment and three years' supervised release for offenses of Count 1: Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. §§ 1349, 1341, and 1343 and Count 27: Money Laundering in violation of 18 U.S.C. §§ 1957 and 2.  Supervision commenced on August 30, 2019, and is set to expire on August 29, 2022.  Jurisdiction of the case was transferred from the District of Oregon to the District of Colorado on January 24, 2020.  As noted in the Second Amended Judgment [Document 1-3], the Court ordered mandatory, special and standard conditions of supervision.  The probation officer alleges the defendant has violated the following terms and conditions of supervised release as set forth herein.

**RESPECTFULLY PRESENTING PETITION FOR ACTION OF THE COURT DUE TO CAUSE AS FOLLOWS:**

**VIOLATION(S) ALLEGED:**

1. **FAILURE TO REPORT ARREST/QUESTIONING BY LAW ENFORCEMENT OFFICER**

On or about May 12, 2020, the defendant was contacted by Denver Police Investigator Mortimer, and failed to report the contact to the probation officer within 72 hours, which constitutes a Grade C violation of supervised release.

On July 12, 2022, the Probation Officer received a copy of Denver Police Department General Offense Hardcopy Report Number 2020-290795, pertaining to a criminal investigation with the Denver Police Department, regarding a stolen vehicle.  The report indicated on May 12, 2020, Investigator Mortimer was working an investigation of a Lo-Jack system notification he received while on shift.  The Lo-Jack led him to an alley behind 965 South Decatur Street in Denver, Colorado.  The neighbor to the north of the residence provided the investigator a business card of the owner of the property which indicated "Mike" (later identified as the defendant) with Champions Landscape and Outdoor Designs.  Investigator Mortimer contacted the defendant and he returned to the address.  His identity was confirmed as Hiep Cong Van through his Colorado Driver's License.  The defendant cooperated with questions asked by Investigator Mortimer and was released from the scene.  The defendant failed to report this police contact to the Probation Officer in any regard.

Case 1:20-cr-00032-RM   Document 16   Filed 08/22/22   USDC Colorado   Page 2 of 11

| Hiep Cong Van | Superseding Petition Due to Violations of Supervision | August 18, 2022 |
| --- | --- | --- |
| 1:20CR00032-1 | Page 2 | |

2. **YOU MUST NOT ENGAGE IN ANY FORM OF GAMBLING AND YOU MUST NOT ENTER ANY CASINO OR OTHER ESTABLISHMENT WHERE GAMBLING IS THE PRIMARY PURPOSE**.

On or about June 2021 through August 2021, the defendant entered the Monarch Casino Resort Spa Black Hawk and/or Isle of Capri Casino Hotel Black Hawk with the purpose of gambling, which constitutes a Grade C violation of supervised release.

On August 31, 2021, the Probation Officer received information from a caller who wished to remain anonymous in fear of retaliation from the defendant. The caller advised the defendant was an employee and expressed concerns of the defendant "going to the casino every night" roughly "five to six days per week" and was fearful of him going back to his "old ways." Additionally, the caller provided the defendant was gambling at the Monarch Casino with a friend. The caller explained the defendant's ability to afford the costs associated with gambling being attributed his friend providing him with money, and he was also taking the cash tips he received from customers at work to support his gambling habits.

On September 8, 2021, the Probation Officer conducted a home visit to the defendant's residence. Initially, the defendant was not home, but he was later directed to report to his residence to complete the home contact. Eventually, he returned, but arrived with a woman named Cassie. The Probation Officer spoke with Cassie outside of the residence for clarification purposes of her relationship/ties to the defendant. It was revealed the defendant met Cassie a couple months prior. She disclosed meeting him at the casino when the defendant was gambling at the Isle of Capri Casino in Black Hawk. She advised the defendant had been gambling and was using "my money" to do so. When asked how much money she provided the defendant to gamble, she said "$8,000 to $10,000" on any given night. We discussed how she was able to afford that amount of money for the defendant, and she disclosed her family was "wealthy" and owned a restaurant business.

The Probation Officer spoke with the defendant during the home visit, separate from other parties about concerns of him gambling. The defendant eventually admitted to gambling, but insisted he had only spent approximately $5,000 to $7000 total. When asked about his time in the casino, the defendant disclosed first gambling in June 2021, and that he would receive money from friends and family to support his gambling conduct. The defendant expressed not being aware of his special conditions as outlined in his Judgment prohibiting him from gambling.

In response to the violation, the defendant was instructed to report for an appointment at the Probation Office to re-review his Judgement and further discuss concerns of his violation conduct. On September 23, 2021, the defendant reported as scheduled. The Probation Officer reviewed his previously signed Judgment and he presented extremely confused about monetary gains and pecuniary proceeds, which was explained in its entirety. Furthermore, the Probation Officer discussed issues and concerns of him receiving cash and avoiding maintaining records of his cash earnings, monetary gains, or pecuniary proceeds into his checking and/or savings account as outlined in his special conditions in his Judgement. As an intermediate sanction, the Probation Officer

referred the defendant to return to gambling addiction treatment to address concerns surrounding his gambling addiction.

3.  **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about February 18, 2022, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty. This constitutes a Grade C violation of supervised release.

On July 12, 2022, the Probation Officer received a Denver Police Department General Offense Hardcopy Report, pertaining to a criminal investigation with the Denver Police Department of fraud, involving the defendant cashing several checks to Mychau Market Inc., fka Cambio De Cheques/Store, Case Number GO2021-641577. The Cambio De Cheques/Store is a company that specializes in functions relating to depository banking.

The report indicates on November 11, 2021, at approximately (1846), Denver Police was dispatched to 490 South Federal Boulevard in Denver, Colorado, on a report of a fraud. According to the complainant, who is also the owner of Mychau Market Inc., the defendant, along with another party, brought in eights checks between October 18, 2021, and October 25, 2021, and deposited them. The checks were written off the business account for Champion Landscape and Design LLC, but did not clear the bank due to the business account for Champions Landscape and Design LLC being closed. The victim advised the defendant went by the name "Mike", which was the name listed on multiple checks. However, she provided the Officer with copies of the driver's license used to cash the checks which bared the defendant's legal name, Hiep Cong Van. The victim expressed trying to reach out to the defendant and the other party involved in order to get this issue resolved, but they never returned her phone calls, so she contacted police.

The case was turned over to the Financial Crimes Unit with the Denver Police Department, and assigned to Detective Tompkins. Further investigation revealed the party present with the defendant when the checks were cashed was the owner of Champion Landscape and Design. The victim reported all check amounts to the Internal Revenue Service (IRS) as the defendant would cash two to three checks at a time, for which the reporting forms were provided. A Check History was provided by Detective Tompkins of checks cashed by "Mike Van." Between September 27, 2021, to October 20, 2021, the report showed 21 checks totaling $132,806. A BOK Financial Report shows eight checks totaling $61,750 on ReturnSource.

A Court Order for US Bank records was obtained for the US Bank account belonging to Champion Landscape and Design LLC, which revealed the account was closed in October 2021.

On February 18, 2022, Detective Tompkins received a call from the victim stating she had entered an agreement with her attorney and the defendant for him to repay the funds associated with the bad checks which were cashed, totaling $43,745.00.

Case 1:20-cr-00032-RM   Document 16   Filed 08/22/22   USDC Colorado   Page 4 of 11

| Hiep Cong Van | Superseding Petition Due to Violations of Supervision | August 18, 2022 |
|---|---|---|
| 1:20CR00032-1 | Page 4 | |

According to the signed Promissory Note drafted by the law firm that represents Mychau Market Inc., fka Cambio De Cheques/Store, the defendant agreed to pay $5500 per month, in 14 payments, to pay a total of $77,000.  Because this is "business money", a charge of $7,000 in interest was applied plus attorney's fees of $350 per hour.  The first payment was scheduled for May 1, 2022.  Due to the defendant entering in a civil agreement with the victim for repayment, the District Attorney refused charges and the investigation was closed.

At no time did the defendant report this change in his economic circumstance to the Court.

4. **YOU MUST DEPOSIT INTO A SINGLE CHECKING ACCOUNT AND/OR SAVINGS ACCOUNT IN YOUR OWN NAME AND DEPOSIT INTO THIS ACCOUNT ALL INCOME, MONETARY GAINS, OR OTHER PRECUNIARY PROCEEDS, AND MAKE USE OF THIS ACCOUNT FOR PAYMENT OF ALL PERSONAL EXPENSES.**

On or about September 22, 2021, the defendant made a purchase to American Furniture Warehouse in cash and failed to make this purchase using his checking account, which constitutes a Grade C violation of supervised release.

On September 21, 2021, a home visit was conducted to the defendant's residence.  While there, it was noted the defendant had no furniture in the one-bedroom and one-bathroom apartment.  He advised buying furniture and was waiting for it to be delivered.

On October 1, 2021, a home visit was conducted to the defendant's residence.  While there, it was noted the defendant had fully furnished his apartment with a brand-new television, couch set, end tables, bar stools, and a bedroom set.  He advised purchasing the furniture at American Furniture Warehouse, but initially stated his girlfriend purchased the furniture.  The defendant then clarified the both of them paid for it but admitted to paying for it in cash.  The defendant was instructed to provide the sales receipt of the furniture by the end of business.

The sales receipt received by the defendant from American Furniture Warehouse indicated a sales order dated September 22, 2021, in the amount of $4,360.47, which was sold to "Mike Van" and delivered to "Mike Van" listing his home address and contact information.  The defendant highlighted that he only purchased seven of the 11 items, which totaled $524.00.

5. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about August 23, 2021, August 29, 2021, and August 30, 2021, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty.  This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program.  The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $43,500 in cash to be used by the defendant to engage in gambling at the Monarch Black Hawk Casino.  The CTR also indicated the defendant cashed out a total of $26,000.  The total Cash-In amount was a result of a $30,500 transaction on August 23, 2021, and a $13,000 transaction on August 29, 2021.  Cash-Out amount of $26,000 occurred on August 30, 2021.  The aforementioned transactions reflect a change in the defendant's ability to pay his assessed financial penalty for the month of August 2021.

6. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about September 3, 2021; September 4, 2021; September 5, 2021; September 6, 2021; September 7, 2021; September 14, 2021; September 16, 2021; September 18, 2021; and September 27, 2021, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty.  This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program.  The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $151,950 in cash to be used by the defendant to engage in gambling at the Monarch Black Hawk Casino.  The CTR also indicated the defendant cashed out a total of $64,405.  The total Cash-In amount was the result of a $14,850 transaction on September 3, 2021; a $11,200 transaction on September 4, 2021; a $20,000 transaction on September 6, 2021; a $21,800 transaction on September 7, 2021; a $22,200 transaction on September 14, 2021; a $11,800 transaction on September 16, 2021; a $35,900 transaction on September 18, 2021; and a $14,200 transaction on September 27, 2021.  The total Cash-Out amount was the result of a $29,000 transaction on September 5, 2021; a $24,155 transaction on September 6, 2021; and a $11,250 transaction on September 14, 2021.  The aforementioned transactions reflect a change in his ability to pay his assessed financial penalty for the month of September 2021.

7. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about October 2, 2021; October 16, 2021; October 19, 2021; October 20, 2021; October 22, 2021; October 26, 2021; and October 27, 2021, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty.  This constitutes a Grade C violation of supervised release.

Case 1:20-cr-00032-RM   Document 16   Filed 08/22/22   USDC Colorado   Page 6 of 11

| | | |
|---|---|---|
| Hiep Cong Van<br>1:20CR00032-1 | Superseding Petition Due to Violations of Supervision<br>Page 6 | August 18, 2022 |

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program. The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $143,840 in cash used by the defendant to engage in gambling at the Monarch Black Hawk Casino. The CTR also indicated the defendant cashed out a total of $13,600. The total Cash-In amount was the result of a $25,000 transaction on October 2, 2021; a $19,600 transaction on October 16, 2021; a $13,000 transaction on October 19, 2021; a $23,300 transaction on October 20, 2021; a $18,600 transaction on October 22, 2021; a $33,500 transaction on October 26, 2021; and a $10,840 transaction on October 27, 2021. The total Cash-Out amount was a result of $13,600 transaction on October 20, 2021. The aforementioned transactions reflect a change in his ability to pay his assessed financial penalty for the month of October 2021.

8. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about November 25, 2021, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty. This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program. The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $13,575 on November 25, 2021, at the Monarch Black Hawk Casino. The CTR indicated the defendant cashed out this total in cash on the aforementioned date. This transaction reflects a change in his ability to pay his assessed financial penalty for the month of November 2021.

9. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about January 28, 2022, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty. This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program. The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $12,600 on January 28, 2022, used by the defendant to engage in gambling at the Monarch Black Hawk Casino. The total Cash-In amount was a result of the aforementioned single transaction. This reflects a change in his ability to pay his assessed financial penalty for the month of January 2022.

Case 1:20-cr-00032-RM   Document 16   Filed 08/22/22   USDC Colorado   Page 7 of 11

Hiep Cong Van  
1:20CR00032-1

Superseding Petition Due to Violations of Supervision  
Page 7

August 18, 2022

10. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about March 5, 2022, and March 7, 2022, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty. This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program. The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $26,700 in cash he used to participate in gambling at the Monarch Black Hawk Casino. The total Cash-In amount was a result of a $10,800 transaction on March 5, 2022, and a $15,900 transaction on March 7, 2022. The aforementioned transactions reflect a change in his ability to pay his assessed financial penalty for the month of March 2022.

11. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about April 4, 2022, and April 6, 2022, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty. This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program. The 81-page Currency Transaction Report (CTR) revealed the defendant made transactions totaling $29,500 in cash the defendant used to engage in gambling at the Monarch Black Hawk Casino. The total Cash-In amount was a result of a $14,350 transaction on April 4, 2022, and a $15,150 transaction on April 6, 2022. The aforementioned transactions reflect a change in his ability to pay his assessed financial penalty for the month of April 2022.

12. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about May 18, 2022; May 20, 2022; May 22, 2022; May 27, 2022; and May 30, 2022, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty. This constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program. The 81-page Currency Transaction Report (CTR) revealed the defendant

Case 1:20-cr-00032-RM   Document 16   Filed 08/22/22   USDC Colorado   Page 8 of 11

| Hiep Cong Van | Superseding Petition Due to Violations of Supervision | August 18, 2022 |
| --- | --- | --- |
| 1:20CR00032-1 | Page 8 | |

made transactions totaling $84,200 in cash used by the defendant to engage in gambling at the Monarch Black Hawk Casino. The total Cash-In amount was a result of a $14,900 transaction on May 18, 2022; a $17,600 transaction on May 20, 2022; a $20,800 transaction on May 22, 2022; a $19,900 transaction on May 27, 2022; and a $11,000 transaction on May 30, 2022. The aforementioned transactions reflect a change in his ability to pay his assessed financial penalty for the month of May 2022.

### 13. YOU MUST NOT ENGAGE IN ANY FORM OF GAMBLING AND YOU MUST NOT ENTER ANY CASINO OR OTHER ESTABLISHMENT WHERE GAMBLING IS THE PRIMARY PURPOSE.

On or about August 2021 through May 2022, the defendant entered the Monarch Casino Resort Spa Black Hawk with the purpose of gambling, which constitutes a Grade C violation of supervised release.

On July 13, 2022, the Probation Officer received several documents from the District of Oregon, Asset Recovery and Money Laundering Section – Financial Litigation Program. The 81-page Currency Transaction Report (CTR) revealed the defendant possessed a total Cash-In amount of $1.6 million dollars between the dates of August 23, 2021, through May 30, 2022, at the Monarch Casino Resort Spa Black Hawk in Black Hawk, Colorado, resulting from 27 documented separate occurrences. It should be noted, all Cash-in transactions totaled amounts between $10,000 upward to $33,500. The listed Cash-Out transactions totaled $117,580. Additionally, records reveal the defendant's 32-page Hotel portfolio with the Monarch Casino Resort Spa Black Hawk, reflecting hotel stays by the defendant between August 31, 2021, through May 29, 2022, on 17 different occasions. To date, the defendant has denied gambling in any capacity since August 2021 to both the Probation Officer and his gambling addiction specific therapist.

### 14. FAILURE TO PAY FINE/RESTITUTION AS DIRECTED

The defendant failed to make payments toward his restitution on October 30, 2019; November 30, 2019; December 30, 2019; January 30, 2020; February 29, 2020; March 30, 2020; May 30, 2020; July 30, 2020; August 30, 2020; November 30, 2020; January 30, 2021; April 30, 2021; July 30, 2021; September 30, 2021; November 30, 2021; December 30, 2021; February 28, 2022; April 30, 2022; June 30, 2022; and July 30, 2022, as directed by the Court/probation officer, which constitutes of Grade C violation of supervised release.

On September 5, 2019, the defendant executed a payment plan, agreeing to pay 10 percent of his gross monthly income toward his restitution obligation by the 30th day of each month. This was based upon his income and ability to pay at the onset of supervision and in accordance with the schedule of payments section of the judgment.

The defendant failed to make restitution payments as directed on October 30, 2019; November 30, 2019; December 30, 2019; January 30, 2020; February 29, 2020; March 30, 2020; May 30, 2020; July 30, 2020; August 30, 2020; November 30, 2020; January 30, 2021; April 30, 2021; July 30, 2021; September 30, 2021; November 30, 2021;

Case 1:20-cr-00032-RM   Document 16   Filed 08/22/22   USDC Colorado   Page 9 of 11

| Hiep Cong Van | Superseding Petition Due to Violations of Supervision | August 18, 2022 |
|---|---|---|
| 1:20CR00032-1 | Page 9 | |

December 30, 2021; February 28, 2022; April 30, 2022; June 30, 2022; and July 30, 2022.

15. **FAILURE TO NOTIFY THE COURT OF ANY CHANGES IN ECONOMIC CIRCUMSTANCES THAT MIGHT AFFECT YOUR ABILITY TO PAY A FINANCIAL PENALTY.**

On or about February 1, 2022, the defendant had a change in his economic circumstances, and failed to notify the Court of said change, which affected his ability to pay a financial penalty. This constitutes a Grade C violation of supervised release.

On August 4, 2022, the Probation Officer received an Arapahoe County Sheriff's Office Incident Report, pertaining to a criminal investigation, involving a report of suspicion of elder abuse as reported by an employee from the First National Bank, Case Number AC22-0002037.

The report indicates on February 3, 2022, at approximately (1100) hours, Arapahoe County Sheriffs were dispatched to the First National Bank at 7056 E. Euclid Drive in Centennial, Colorado, on a report of concerns of an elderly client of the bank. The client attempted to withdraw $60,000 from her account with two younger subjects who entered the bank with her. Additionally, the reporting party was concerned for the client's safety because she lived alone at her residence.

On the same date, Sheriffs Officers responded to the client's residence to conduct a welfare check. Upon arrival, the client was in the front of her residence walking her dog and confirmed her identification to the officer's. When asked how she was doing, the client replied, "Better now that you are here" and allowed the Officer's into her residence. While there, officer's noted there were no signs of apparent danger, and the client was uninjured. The client acknowledged knowing why officers were at her home and the concerns from the bank teller. The client advised hiring a landscaping company on January 31, 2022, to do $29,000 worth of landscaping work at her property, which was completed on or about January 29, 2022. The male the client identified as doing the landscaping work was Mike Van with Champion Landscaping and Outdoor Designs, LLC. She advised Mr. Van owned the landscaping company with his soon to be ex-wife. When asked if she felt receiving a fair price for the landscaping work, the client stated she did not think so. The client described the work completed included receiving a retainer wall, Astroturf, and brick work. She also asked for additional turf which the defendant purchased and installed for additional money. Furthermore, there was a utility trailer associated with the landscaping company was parking in the front of her residence that bearded the logo Champion Landscaping and Outdoor Designs, LLC.

On January 31, 2022, after completion of the landscaping work for the client, the client reported the defendant returned to her home upset and crying. He expressed needing a loan for $60,000 for repairs to a building he and his soon to be ex-wife jointly owned and was trying to sell. The client was given six, unsigned vehicle titles from the defendant as collateral, a signed and witnessed promissory note from the defendant which provided a co-signer, along with a handwritten interest agreement to add $20,000 for interest signed by the defendant.

Case 1:20-cr-00032-RM   Document 16   Filed 08/22/22   USDC Colorado   Page 10 of 11

| Hiep Cong Van | Superseding Petition Due to Violations of Supervision | August 18, 2022 |
| --- | --- | --- |
| 1:20CR00032-1 | Page 10 | |

On February 1, 2022, the client agreed to the terms of the proposed agreement by the defendant and agreed to loan the defendant $60,000 until July 5, 2022.  The defendant, along with the co-signer of the loan identified as Nattada Kittipoonpat, went with the client to First National Bank to obtain the funds.  First National Bank did not allow the client to withdraw the funds and told her she was being scammed, causing them to leave the bank.

On February 2, 2022, the defendant returned to the client's residence "begging" for money.  The client wrote the defendant two personal checks totaling $17,000, which were successfully cashed.  The client began having second thoughts and began talking to the bank and her attorney.  Furthermore, she spoke with her neighbor who originally referred the defendant to complete landscaping work, about the defendant experiencing a financial hardship.  The client's attorney believed the client was being scammed due to the terms presented to her by the defendant being handwritten on a piece of paper and the titles to the vehicles not being signed.

At the conclusion of the investigation, the client expressed not feeling that she was being pressured into giving money to the defendant.  Additionally, the client explained she would not suffer any hardship if the defendant did not pay her back and did not want to pursue any criminal charges.  Furthermore, the client believed the defendant was suffering from a financial hardship and truly needed the help and was going to make arrangements to give the defendant an additional $43,000 on February 8, 2022.

As of this writing, the client confirmed giving the defendant an additional $5,000 in cash after the $17,000 was received.  The defendant has not made any payments to her to satisfy these loans.

## STATEMENT IN SUPPORT OF ACTION/JUSTIFICATION

That this superseding petition replace the previously submitted petition [Document 4] and that the Court consider revocation of supervision at the violation hearing based on the superseding petition.

I DECLARE under penalty of perjury that the foregoing is true and correct.

*s/ Damillah Williams*
  Damillah Williams
  United States Probation Officer
  Place:   Denver
  Date:   August 18, 2022

*s/ Garret Pfalmer*
  Garret C. Pfalmer
  Supervisory United States Probation Officer
  Place:   Denver
  Date:   August 18, 2022

Case 1:20-cr-00032-RM   Document 16   Filed 08/22/22   USDC Colorado   Page 11 of 11

| | | |
|---|---|---|
| Hiep Cong Van<br>1:20CR00032-1 | Superseding Petition Due to Violations of Supervision<br>Page 11 | August 18, 2022 |

**PRELIMINARY ADVISORY REVOCATION GUIDELINE CALCULATION:**

The defendant was originally convicted of a Class C felony, thus the maximum sentence allowed upon revocation is 2 years imprisonment, pursuant to 18 U.S.C. § 3583(e). Based upon Chapter 7 of the U.S. Sentencing Guidelines, the most serious conduct alleged as a violation of supervision is considered a Grade C violation.  The defendant's criminal history is a Category III, thus the advisory guideline range for revocation is five to 11 months.